**Besime KANACEVIC, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE \*, Respondent.**

**Docket No. 04–3878–AG.**

United States Court of Appeals, Second Circuit.

Argued: Feb. 10, 2006.

Decided: May 5, 2006.

---

\* On March 1, 2003, the Immigration and Naturalization Service was reconstituted as the Bureau of Immigration and Customs Enforcement and the Bureau of U.S. Citizenship and Immigration Services, both within the Department of Homeland Security. *Monter v.*

*Gonzales,* 430 F.3d 546, 548 n. 1 (2d Cir.  2005).

Sam Gjoni, Law Office of Sam Gjoni, New York, New York, for Petitioner (on submission).

Scott A. Roetzel, Assistant United States Attorney, District of South Dakota (Michelle G. Tapken, United States Attorney for the District of South Dakota), for Respondent.

Before: JACOBS, WESLEY, and JOHN R. GIBSON,** Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Besime Kanacevic, a native and national of Montenegro, petitions for review of the Board of Immigration Appeals' summary order denying her application for political asylum. We conclude that we have jurisdiction over the petition, and we deny review.

On November 16, 1999, at the age of seventeen, Kanacevic arrived in this country at the Los Angeles International Airport, bearing a fraudulent Slovenian passport. At the airport, she was detained and interviewed by United States Immigration officers. With the assistance of an interpreter, she gave a sworn statement in which she said that she had come to the United States in order to marry Brahim Cekoviq, who she said was a Yugoslavian who had a greencard. She said that their parents had arranged the marriage. When asked if she had any fear about being removed from the United States, she said she had no friends "there" and she was afraid to travel alone. When asked if she would be harmed if she were removed from the United States, she said no. She was accompanied by a man from whom she had obtained the false passport, who, she said, "handled everything."

Two years later, on August 3, 2001, she filed an application for asylum, stating that she had been harassed by Serbian soldiers on account of her Albanian ethnicity; she feared the Serbs would harass, rape, or murder her if she returned to Montenegro; and she sought political asylum.

Kanacevic was represented by counsel at the hearing on her asylum application. Kanacevic testified that during the Kosovo war, the unrest had spread into Montenegro. She testified that Serbs came to Montenegro to wage war and that they raped Muslim women, including one of her neighbors. In June of 1999, her family sheltered five Kosovars for three weeks. Serbian soldiers came to her house and took Kanacevic's father and the Kosovars to the police station, where they kept them for two or three hours. Kanacevic said the soldiers beat her father and told him to send the Kosovars away; after that, the Kosovars left. She said that also in June 1999, Serbian police came to her house and said that all Muslim girls had to die. After that incident, she was frightened and hid in her house for about two months. She said the Serbs returned in July and searched her house, but did not find her. She said she left school after one year of high school because classes were not taught in Albanian.

Kanacevic said her father and one sister immigrated to Australia legally in July 1999. After Kanacevic came to the United

** The Honorable John R. Gibson, Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

States in November 1999, the rest of her family—mother, a sister and a brother—were allowed to go to Australia in 2000.

At the conclusion of the hearing, the Immigration Judge found that Kanacevic did not testify truthfully about her reasons for coming to the United States. The IJ based her negative credibility finding on Kanacevic's evasive and unresponsive testimony, details of her testimony that indicated she was not actually concerned about political persecution, and her statement upon arriving here that she came to marry Brahim Cekoviq. The IJ further found that even if Kanacevic's story were true, it would not establish that she had been subjected to past persecution, and that conditions had so improved in Montenegro since the end of the Kosovo war that there was no reason to fear future persecution. Accordingly, the IJ held that Kanacevic was not eligible for asylum. She also concluded that Kanacevic had not met the standards for withholding of removal or relief under the Convention Against Torture.

The Board of Immigration Appeals affirmed the IJ's order summarily. Kanacevic petitions for review of the denial of asylum.

## I.

Before proceeding to the merits of Kanacevic's petition for review, we must determine whether we have jurisdiction. Be-

cause Kanacevic arrived in this country using a Slovenian passport, she was processed as a participant in the Visa Waiver Program, in which aliens from certain countries, including Slovenia, may visit the United States for 90 days or less without a visa. *See* 8 U.S.C. § 1187(a)(2000 and Supp. II 2002); 8 C.F.R. § 217.2 (2006). Aliens admitted under this program forfeit any right to challenge their removal, except that they may apply for asylum. 8 U.S.C. § 1187(b); 8 C.F.R. § 217.4(a) (2006); *see Wigglesworth v. INS*, 319 F.3d 951, 956 (7th Cir.2003); *Itaeva v. INS*, 314 F.3d 1238, 1239 (10th Cir.2003). Therefore, participants who do apply for asylum are processed in "asylum-only" proceedings. 8 C.F.R. § 208.2(c)(iii) (2006). Unless granted relief in those proceedings, the Visa Waiver applicant can be removed without further proceedings. 8 C.F.R. § 217.4(a)(1) (2006). Kanacevic's asylum application was denied by the BIA in a final order.

■ We now ask whether the denial of the asylum application was a reviewable order.[1] Under 8 U.S.C. § 1252(a)(1)(2000) we have jurisdiction to review a "final order of removal."[2] The government contends that because of the truncated rights available to a Visa Waiver Applicant, the denial of the asylum application is in effect a final order of removal because Kanacevic can be removed without further proceedings.

---

**1.** In the original briefs, neither party objected to our exercise of jurisdiction, but because we have a duty to ascertain the existence of jurisdiction, we asked for supplemental briefing on the question. Both parties agreed that we have jurisdiction.

**2.** Section 1252(a)(1) provides:

(1) General orders of removal

Judicial review of a final order of removal ... is governed only by chapter 158 of Title 28 [28 U.S.C. § 2341–51, popularly

known as the Hobbs Administrative Review Act] ....

Although this section does not explicitly say it creates jurisdiction in the Courts of Appeals to review final orders of removal, it refers to the Hobbs Administrative Review Act, which gives the Courts of Appeals exclusive jurisdiction to review certain administrative orders. Therefore, the section grants jurisdiction over final orders of removal. *See Mejia–Ruiz v. INS*, 51 F.3d 358, 364 & n. 6 (2d Cir.1995) (same analysis for 8 U.S.C. § 1105a(a), predecessor to § 1252(a)(1)).

The Eleventh Circuit considered the same question in *Nreka v. United States Attorney General*, 408 F.3d 1361, 1367 (11th Cir.2005), and concluded, "The denial of an asylum application in a [Visa Waiver Program] proceeding is so closely tied to the removal of the alien that it can be deemed—in conjunction with the referral to the immigration judge—as a final order of removal, subject to § 1252(a)(1)." This reasoning is in line with pre-IIRIRA[3] cases holding that denials of asylum applications were reviewable under former section 8 U.S.C. § 1105a(a), the predecessor to current 8 U.S.C. § 1252(a)(1), as " 'intimately ... and immediately associated' " with the final order of deportation. *Carvajal–Munoz v. INS*, 743 F.2d 562, 566–67 (7th Cir.1984) (reasoning that denial of asylum application in the context of deportation proceedings is intimately and immediately associated with deportation order and therefore reviewable) (quoting *Cheng Fan Kwok v. INS*, 392 U.S. 206, 217, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968)); *see Osorio v. INS*, 18 F.3d 1017, 1027 (2d Cir.1994) (Court of Appeals has jurisdiction under § 1105a(a) to review asylum determination); *Melendez v. United States Dep't of Justice*, 926 F.2d 211, 216 (2d Cir.1991) (same); *see also INS v. Chadha*, 462 U.S. 919, 938–39, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983) (jurisdiction lay under 8 U.S.C. § 1105a(a) to review congressional veto that resulted in deportation order; the term "final orders" includes all matters on which alien's deportation stands or falls); *cf. Gottesman v. INS*, 33 F.3d 383, 386–87 (4th Cir.1994) (declining to review rescission of adjustment of residency sta-

tus because "decisions related to a final order of deportation, but not part and parcel of the deportation order itself, are not subject to review under 8 U.S.C. § 1105a(a)"); *Young v. United States Dep't of Justice*, 759 F.2d 450, 457 (5th Cir.1985) (no jurisdiction to review refusal to reopen bond hearings because such hearings were separate and distinct from deportation proceedings). The courts interpreted the language, "final order of deportation," broadly enough to further the purpose of efficient operation of the deportation process:

An "order of deportation" includes more than just the piece of paper authorizing the government to take custody of the alien and transport him beyond our frontiers. The term extends to any denial of discretionary relief during a deportation proceeding, where such relief, if granted, would foreclose deportation. Denials of applications for withholding of deportation or for asylum, like denials of applications for suspension of deportation, qualify as "order[s] of deportation" that may be judicially reviewed.

*Perkovic v. INS*, 33 F.3d 615, 618 (6th Cir.1994) (BIA order reversing IJ's grant of asylum and remanding was appealable even though no formal order of deportation had issued).

Although the denial of asylum in a Visa Waiver Program case does not occur in the context of removal proceedings, denial of the asylum application is the functional equivalent of a removal order under the provisions of the Visa Waiver program.[4]

---

**3.** Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, 110 Stat. 3009.

**4.** In construing § 1105a(a), the predecessor to § 1252(a), the Supreme Court stated: "Congress quite deliberately restricted the application of [§ 1105a(a) ] to orders entered

during proceedings conducted under [former § 1252(b) governing deportation], or directly challenging deportation orders themselves." *Cheng Fan Kwok v. INS*, 392 U.S. 206, 215, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968). Were we considering jurisdiction to review asylum-only proceedings prior to the enactment of IIRIRA, this language would give us pause.

Were we to elevate form over substance by holding that the disposition of asylum-only proceedings does not function as a final order of removal to confer jurisdiction, we would create uncertainty over exactly what procedure a Visa Waiver applicant could pursue in order to obtain review of his or her asylum proceedings in the Courts of Appeals.

Accordingly, we hold that we have jurisdiction over the petition to review.[5]

## II.

■ The Attorney General may grant asylum to an alien who is a refugee within the meaning of 8 U.S.C. § 1101(a)(42)(A). 8 U.S.C. § 1158(b) (2000 and Supp. II 2002). Section 1101(a)(42)(A)(2000) defines "refugee" to include a person outside his own country who is unable or unwilling to return to his country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. The burden of proof is on the alien applying for asylum to establish that he is a refugee. 8 C.F.R. § 208.13(a) (2002). If the applicant's testimony is consistent, detailed and credible, it may be sufficient to establish eligibility; however, if circumstances indicate that an applicant has, or could be expected to have, corroborating evidence, failure to produce such evidence may be taken into account in deciding whether he has proved eligibility. *Zhang v. INS*, 386 F.3d 66, 71 (2d Cir.2004); *Diallo v. INS*, 232 F.3d 279, 285 (2d Cir.2000).

■ When the BIA affirms the IJ's decision summarily, we review the IJ's decision directly. *Secaida–Rosales v. INS*, 331 F.3d 297, 305 (2d Cir.2003). We must uphold administrative findings of fact if they are supported by reasonable, substantial, and probative evidence in the record as a whole. *Zhang*, 386 F.3d at 73. We may reverse an administrative finding of fact only if any reasonable adjudicator would be compelled to conclude to the contrary of such finding. 8 U.S.C. § 1252(b)(4)(B); *INS v. Elias–Zacarias*, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). In particular, under 8 U.S.C. § 1252(b)(4), we may not reverse the IJ's finding concerning the availability of corroborating evidence unless a reasonable trier of fact would be compelled to find that such corroborating evidence was

The language in *Cheng Fan Kwok* would be difficult to reconcile with the conclusion that former § 1105a(a) created jurisdiction over asylum-only proceedings, even those that were the functional equivalent of deportation, because those proceedings were not conducted under the particular statute named, i.e., former § 1252(b). However, the current jurisdictional statute, § 1252(a)(1), does not contain language such as that in former § 1105a(a), limiting jurisdiction to proceedings under a particular statutory section. We therefore do not consider the language in *Cheng Fan Kwok* to be inconsistent with our result here.

5. The government also argues that the Court of Appeals has "general jurisdiction to review decisions of the Attorney General or the Secretary of Homeland Security regarding asylum relief under Section 1158(a)" pursuant to 8 U.S.C. § 1252(a)(2)(B)(ii). Although other circuits have said that § 1252(a)(2)(B)(ii) might support jurisdiction, *see Nreka*, 408 F.3d at 1367 n. 7; *Tsevegmid v. Ashcroft*, 336 F.3d 1231, 1234 (10th Cir.2003) (dictum); *Haoud v. Ashcroft*, 350 F.3d 201, 205 (1st Cir.2003) (quoting *Tsevegmid* ), on its face § 1252(a)(2)(B)(ii) only excepts asylum determinations from a provision that precludes jurisdiction to review discretionary decisions. Therefore, the effect of § 1252(a)(2)(B)(ii) may be merely to preserve existing jurisdiction to review asylum decisions, rather than to create a new source of jurisdiction. Since we hold that we have jurisdiction pursuant to § 1252(a)(1), we do not need to decide whether § 1252(a)(2)(B)(ii) could also support jurisdiction.

unavailable. *Kyaw Zwar Tun v. INS*, 445 F.3d 554, 564–64 (2d Cir.2006) (applying section 101(e) of Real ID Act of 2005, 119 Stat. 231, 302 (May 11, 2005), which was effective immediately upon enactment).

When an IJ finds the applicant's testimony not credible, the IJ must provide "specific, cogent" reasons for that finding.[6] *Secaida–Rosales*, 331 F.3d at 307. Inconsistencies and omissions in the applicant's testimony and previous statements must be evaluated in the context of the whole record; only substantial discrepancies will serve as cogent reasons for a finding of non-credibility. *Id.* at 308. Holding an applicant to an inappropriately high standard of consistency or completeness is a legal error, reviewed de novo. *Id.* at 307, 309. On the other hand, we give "particular deference" to the IJ's credibility determinations, because the IJ had the advantage of viewing live testimony. *Zhang*, 386 F.3d at 73.

### III.

The IJ in this case found that Kanacevic was not a credible witness, citing a long list of specific reasons for her finding. Twice in Kanacevic's testimony, Kanacevic seemed oblivious to factors that the IJ would have expected to be in the forefront of Kanacevic's mind, had she truly been fleeing political persecution on the basis of her Albanian identity. First, when Kanacevic's attorney tried to elicit from her that she was Albanian, Kanacevic did not supply the answer until the attorney's fourth try, when she finally said, "Albanian." Later, the IJ asked her if she was aware that the war in her country was over; she said

no. This led the IJ to conclude that Kanacevic was not concerned about the war.

The IJ also concluded that Kanacevic was evasive when questioned about why she did not legally immigrate to Australia with the rest of her family. Kanacevic said that she did not join the rest of her family in Australia because she did not have a visa and she did not get a visa because she lacked the necessary documents. Counsel for the government pointed out that Kanacevic had a valid Yugoslavian passport and asked why her father could not use that passport to get the same permission for her as for the rest of her family. She replied, "I don't know." The IJ found that Kanacevic gave no reasonable explanation for coming to the United States illegally instead of going to Australia legally.

Next, the IJ pointed out that Kanacevic's airport interview was substantially inconsistent with her asylum claim. At the airport interview, Kanacevic said she came to the United States to marry Brahim Cekoviq, a Yugoslav whom her parents had arranged for her to marry. She said she did not fear that she would be harmed if she were removed from the United States.

The interview was memorialized in a verbatim, sworn, signed statement. Kanacevic was assisted by an interpreter and asked at the outset if she would freely and voluntarily answer the questions; she answered yes, and she gave no reason to believe she was reluctant to answer freely. These circumstances all weigh in favor of considering the airport interview reliable. *See Ramsameachire v. Ashcroft*, 357 F.3d 169, 180 (2d Cir.2004) (listing relevant fac-

---

**6.** The Real ID Act of 2005 amended the standards for credibility determinations in asylum proceedings, Pub.L. No. 109–13, § 101(a)(3), 119 Stat. 231, 303 (May 11, 2005), but the new provisions do not apply here because the asylum application was made before the effective date of the statute. § 101(h)(2), 119 Stat. 305. *See Ivanishvili v. United States Dep't of Justice*, 433 F.3d 332, 339 (2d Cir.2006).

tors in evaluating reliability of airport statements). She was asked questions designed to elicit any possible asylum claim, and she did not mention anything about the war or the Serbians. When an alien gives a substantially different explanation for the decision to immigrate at the airport than he or she later adopts in an asylum application, the inconsistency is a specific, cogent reason for finding that the asylum story is not credible. *See Yun–Zui Guan v. Gonzales,* 432 F.3d 391, 398–99 (2d Cir. 2005) (per curiam).

▮ Kanacevic explained these serious inconsistencies by contending that she had actually told the United States officials at the airport that she was afraid because of the war, but that they had rejected her explanation and had threatened to hold her without food, water or sleep. She said the questioning lasted an hour and a half. She testified that she made up the story about coming to marry Brahim Cekoviq because she was scared, but she did not explain why she thought the United States officials wanted her to tell that story rather than the one about the war. The IJ must consider the applicant's complaints of coercion. *Yun–Zui Guan,* 432 F.3d at 398 n. 6. The IJ found it inherently implausible that United States immigration officials would threaten to keep Kanacevic captive without food, drink, or sleep until she told a story about wanting to come here to get married. The statement that she came to get married, on the other hand, was detailed and plausible, especially when taken in tandem with Kanacevic's failure to join her family when they immigrated to Australia legally and her apparent lack of interest in the war. *See Ming Xia Chen v. BIA,* 435 F.3d 141, 145–46 (2d Cir.2006) (discussing evaluation of IJ's finding of implausibility). The IJ found that Kanacevic's initial statement about coming here to marry was "the closest thing to the truth that has been

told this afternoon." Substantial evidence supports the IJ's choice to believe Kanacevic's airport story rather than the story she told at the hearing.

▮ The IJ also took into account that Kanacevic did not provide any corroborating accounts of her asylum story from her relatives, especially her father, who was the only person in her family who was alleged to have been harmed physically by the Serbs. The IJ explained that since Kanacevic's relatives were in Australia, they could have been expected to provide corroborating statements. The IJ did not violate applicable legal standards in taking into account the absence of corroboration that could easily have been made available. *See Diallo,* 232 F.3d at 285–86; 8 U.S.C. § 1252(b)(4).

▮ Finally, the IJ stated that the vagueness of Kanacevic's account about the Kosovar refugees undermined her credibility. Kanacevic initially did not tell how her family came to shelter the Kosovars, and her attorney did not initially elicit any detail about the episode; however, in response to questioning by the IJ, Kanacevic stated that they were a family of five and they stayed three weeks. Where an IJ harbors doubts about an applicant's testimony because of meagerness or lack of detail, the IJ should probe for the additional details. *You Hao Yang v. BIA,* 440 F.3d 72, 74 (2d Cir.2006) (per curiam). The IJ did ask for additional detail here, and Kanacevic answered the questions. However, we need not decide whether lack of detail was an appropriate basis for the negative credibility finding because it was only one of many reasons supporting the finding.

▮ Even if the IJ erred in saying vagueness undermined Kanacevic's credibility, "where ... the adjudicator relied so little on the error-infected aspect of its reasoning, that there is no realistic possi-

138

bility of a different result on remand," *Cao He Lin v. United States Dep't of Justice,* 428 F.3d 391, 395 (2d Cir.2005), remand is not required. *Qyteza v. Gonzales,* 437 F.3d 224, 228 (2d Cir.2006) (per curiam). The IJ's mention of lack of detail was one factor in a long list of reasons for rejecting Kanacevic's story, and there is no likelihood that the result would have been different without this one reason.

We conclude that the IJ's negative credibility determination is supported by substantial evidence in the record.

### IV.

 Kanacevic also argues that the IJ erred in finding that she had not been subjected to past persecution and that there was no reasonable possibility of future persecution. We need not decide whether Kanacevic suffered past persecution, because even if an applicant has established past persecution, the applicant will not be eligible for asylum if a fundamental change in circumstances in the relevant country obviates the basis for fearing future persecution. 8 C.F.R. § 208.13(b)(1)(i)(A). The IJ found that the State Department Report, "Questionable Asylum Claims Involving Montenegrins," Ex. 6, indicated that human rights conditions had improved in Montenegro since the 1990's, but that there has been a "mass exodus" of economic migrants leaving the country. As the IJ noted elsewhere, Kanacevic claims to have fled a war that is now over. Kanacevic does not offer any evidence to contradict the State Department's report. There was substantial evidence to support the IJ's finding that Kanacevic could return to Montenegro without reason to fear persecution.

We DENY the petition for review.