

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-29-2006

# Adesoya v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3048

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Adesoya v. Atty Gen USA" (2006). *2006 Decisions*. Paper 816.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/816

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 05-3048 & 05-3049

_____

BOSE ADESOYA, Petitioner in 05-3048

v.

ATTORNEY GENERAL OF THE UNITED STATES,

MOSHOOD EMIOLA AJIJOLA, Petitioner in 05-3049

v.

ATTORNEY GENERAL OF THE UNITED STATES,

_____

On Petition for Review from the
United States Department of Justice
Board of Immigration Appeals
(BIA Nos. A78 830 913 & A96 262 856)

_____

Submitted pursuant to Third Circuit L.A.R. 34.1(a)
June 29, 2006

Before: BARRY, VAN ANTWERPEN, and JOHN R. GIBSON,[*] Circuit Judges.

(Filed June 29, 2006)

_____

[*] Honorable John R. Gibson, United States Court of Appeals for the Eighth Circuit, sitting by designation.

OPINION OF THE COURT

VAN ANTWERPEN, <u>Circuit Judge</u>.

Before us are the petitions for review filed by Bose Adesoya and Moshood Emiola Ajijola and the government's motion to dismiss Adesoya's petition. For the reasons set forth herein, we will dismiss Adesoya's petition for lack of jurisdiction, and will deny Ajijola's petition.

I.

Because we write solely for the parties, our relation of the facts is confined to those necessary to our adjudication. Adesoya and Ajijola are natives and citizens of Nigeria, and are married to each other. Adesoya professes to be a Christian, and Ajijola a Muslim. They seek asylum in the United States on the basis that they have suffered persecution in Nigeria on account of their interfaith relationship, and that they would face further persecution if they returned there. The couple met and began their relationship in Kaduna, Nigeria in 1996. They kept it secret for three years because the prevailing interpretation of Islamic law forbade such unions. Ajijola's father was a Muslim religious leader in the community, and when he eventually learned of the relationship, he set out to stop it because it violated Shari'a. According to the couple, he undertook a "campaign of terror," Br. of Pet. 6., aided by other Muslims in Kaduna. Groups of Muslims went to Adesoya's family's house on several occasions to warn the family that Adesoya would be killed if she and Ajijola persisted in their relationship. Adesoya testified that Ajijola's

father had her family's house burned, that her parents died in the fire, and that she only survived because she was at a church choir practice. The fire occurred during general religious rioting in that area. Adesoya also testified that resettlement in another state in Nigeria was not an option because a pervasive network of Muslims who read Shari'a in a manner severely adverse to the couple existed, and would kill them wherever they were.

Immediately after the fire, the couple fled Kaduna, and ultimately left Nigeria. Adesoya and Ajijola traveled separately for a time, but reunited in France in January of 2001. From there, Adesoya came to the United States, followed by Ajijola. On May 6, 2003, Ajijola was charged with removabiltiy; he conceded the charge at a June 3, 2003 hearing before an Immigration Judge ("IJ") in Newark, New Jersey, and he was ordered removed to Nigeria. Adesoya had not been charged as removable, but on March 13, 2002, she filed an asylum-only application, and sought derivative asylum for Ajijola as her spouse. The two cases were consolidated in immigration court.

At a May 8, 2002 hearing, the IJ set a June 17, 2002 deadline to submit evidence in support of the application, and later extended the deadline to August 1, 2003 – more than a year later. The case proceeded to a merits hearing on January 8, 2004, where the couple testified as set forth above. At the hearing, the IJ expressed doubt as to Adesoya's and Ajijola's evidence as to their respective religions.

A week later, on January 15, 2004, Adesoya and Ajijola moved to reopen the proceeding to admit more evidence. In a hastily-convened telephone hearing in which the government waived formal notice, counsel for Adesoya and Ajijola sought to introduce letters from an imam at Ajijola's mosque, and a pastor at Adesoya's church. The letters

were dated after the merits hearing, and attested to Ajijola's and Adesoya's membership in their respective religious communities. Counsel stated that the couple had given him the letters after the hearing. The IJ denied the motion to reopen, and proceeded to deny asylum. The IJ entered an order of removal against Ajijola, but because Adesoya had not been charged with removability, the IJ returned her case to the Department of Homeland Security for further consideration.

Adesoya and Ajijola appealed to the Board of Immigration Appeals ("BIA"), which affirmed without opinion on February 22, 2005. The couple timely moved the BIA to reopen their case on April 12, 2005. In this motion, they presented twenty-five documents they alleged were unavailable at the time of their merits hearing in immigration court. These included letters, affidavits, news articles, and other documents offered to show the couple's respective religious faiths and practices in Nigeria, and the persecution they faced as a result. The BIA denied the motion to reopen on May 17, 2005. On June 15, 2005, Adesoya and Ajijola timely petitioned for review by this Court.

## II.

### A.

We have jurisdiction over Ajijola's petition for review under 8 U.S.C. § 1252(a)(1). The government moves to dismiss Adesoya's petition for lack of jurisdiction. We will grant the motion. Adesoya was placed in "asylum-only" proceedings, which do not test the issue of her ultimate removability. Upon denying Adesoya's application, the IJ ordered her case returned to the Department of Homeland Security ("DHS") "for further consideration." The BIA affirmed this order. Section 1252(a)(1) grants us

-4-

jurisdiction to review final orders of removal, but the disposition of Adesoya's case has not resulted in such an order. Contrary to her contention, the present situation is not "tantamount" to a final order of removal. Several courts of appeals *have* held that a "final order of removal" includes "denial of discretionary relief during a deportation proceeding, where such relief, if granted, would foreclose deportation." Kanacevic v. INS, ___ F.3d ___, 2006 WL 1195925, at *3 (2d Cir. May 5, 2006) (quoting Perkovic v. INS, 33 F.3d 615, 618 (6th Cir. 1994)); accord Nreka v. Atty. Gen., 408 F.3d 1361, 1367 (11th Cir. 2005). These cases are distinguishable. In these situations, the denial of relief essentially functioned as a removal order, a circumstance not present here. For instance, in Kanacevic, the court held that denial of asylum to an alien in the Visa Waiver Program ("VWP") was akin to a final order of removal because VWP participants may be removed without benefit of removal proceedings. 2006 WL 1195925, at *3; see 8 U.S.C. § 1187(b)(2) (VWP participant must waive right "to contest, other than on the basis of an application for asylum, any action for removal . . . .").

Here, the order would merely return Adesoya's case to DHS for further consideration. By itself, this could not result in her removal. Rather, the agency would have to secure an order of removal against her through formal removal proceedings. See 8 U.S.C. § 1229a(a)(3) ("Unless otherwise specified in this chapter, a proceeding under this section shall be the sole and exclusive procedure for determining whether an alien may be . . . removed from the United States."). Though Adesoya argues that "there would be nothing left for [her] to appeal," we disagree: she would be able to petition for review of the final order of removal (if one were entered against her), and with it, the

-5-

present denial of her asylum application.

B.

Where the BIA's denial of a motion to reopen rests on its determination "that the movant has failed to introduce previously unavailable, material evidence that justifies reopening," our review is for abuse of discretion. Sevoian v. Ashcroft, 290 F.3d 166, 171 (3d Cir. 2002) (citing INS v. Abudu, 485 U.S. 94, 105 (1988)). In contrast, where the denial is founded upon failure to make out a prima facie case for relief, we review findings of fact for substantial evidence, and the ultimate decision whether to reopen for abuse of discretion. Id. at 174. The BIA abuses its discretion where its decision is "arbitrary, irrational, or contrary to law." Id. (quoting Tipu v. INS, 20 F.3d 580, 582 (3d Cir. 1994)). In general, motions to reopen are disfavored. Korytnyuk v. Ashcroft, 396 F.3d 272, 293 n.27 (3d Cir. 2005). Ajijola also raises a due process claim, which is subject to plenary review. Singh v. Gonzales, 432 F.3d 533, 541 (3d Cir. 2006).

III.

We now turn to the merits of Ajijola's petition. The motion to reopen before the BIA presented a bevy of material – 25 separate exhibits – but the BIA did not abuse its discretion by excluding it. "A motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 1003.2(c)(1). The first set of evidence is a collection of letters and affidavits that Adesoya and Ajijola obtained after their merits hearing. Though the materials and the motion do proffer some explanation for their tardiness, they do not venture beyond flatly

-6-

conclusory assertions that the declarants were unavailable, out of touch, or simply away. Without more substantial explanations, we cannot say that the BIA abused its discretion – that is, that it was "arbitrary, irrational, or contrary to law" – to conclude that these materials could have been obtained prior to, and presented at, the January 8, 2004 merits hearing.

The evidence regarding country conditions in Nigeria was arguably unavailable at the time of the hearing, but it would not serve to make out a prima facie case of eligibility for relief. The BIA may, of course, deny reopening where the new evidence would not be sufficient to make out a prima facie case for relief. Sevoian, 290 F.3d at 169-70. We review the determination of whether a prima facie case has been made out for substantial evidence. Id. at 174. An asylum applicant must show past persecution or a well-founded fear of future persecution. Mulanga v. Ashcroft, 349 F.3d 123, 132 (3d Cir. 2003). Here, the BIA simply stated that the news articles presented in the motion to reopen were insufficient to make out a prima facie case for relief, and did not elaborate. However, it is glaringly obvious that the articles do nothing to show deteriorating conditions in Nigeria such that Ajijola could not avoid persecution by avoiding discrete areas. See Vente v. Gonzales, 415 F.3d 296, 303 (3d Cir. 2005) (noting under 8 C.F.R. § 1208.13(b)(3)(i) that applicant has burden to show no possibility of internal relocation where no past persecution shown, and future persecution not attributable to government or government sponsorship). Indeed, the articles refer to strife and violence only in the city of Kano and the state of Plateau. They do not suggest that Ajijola would face danger elsewhere in Nigeria. Accordingly, the BIA's conclusion was supported by substantial evidence, and

the Board did not abuse its discretion by denying reopening as to the articles.

Finally, Ajijola contends that the BIA's decision denying the motion to reopen violated due process because it did not give a sufficient statement of reasons. To comport with due process, the BIA must afford aliens (1) "factfinding based on a record produced before the decisionmaker and disclosed to him or her"; (2) an opportunity for the alien to present arguments; and (3) "an individualized determination of his or her interests." Abdulai v. Ashcroft, 239 F.3d 542, 549 (3d Cir. 2001) (citations, internal quotation marks, and modifications omitted). "A decisionmaker must 'actually consider the evidence and argument that a party presents.'" Id. at 549-50. Here, the BIA's decision met these requirements, even if it was rather terse. In particular, the BIA plainly gave individualized consideration to the exhibits and arguments presented on appeal, but rejected them as a basis for granting the motion to reopen. Under the circumstances, Abdulai requires no more than this.

V.

For the foregoing reasons, we will grant the government's motion to dismiss Adesoya's petition, and deny Ajijola's petition.