

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-21-2006

# Gjopalaj v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-5305

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Gjopalaj v. Atty Gen USA" (2006). *2006 Decisions.* Paper 44.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/44

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-5305
_____

NIKOLLE GJOPALAJ,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

_____

No. 05-5306
_____

RAZIE GJOPALAJ,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

_____

No. 05-5307
_____

ALDO NIKOLL GJOPALAJ,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

_____

No. 05-5308

_____

DORINA GJOPALAJ,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

_____

On Petition for Review from
Orders of the Board of Immigration Appeals
(Board Nos. A79 554 383, A79 554 384, A79 554 386 and A79 554 385)
Immigration Judge Charles M. Honeyman

_____

Submitted Under Third Circuit LAR 34.1(a)
December 11, 2006

Before: FISHER and CHAGARES, *Circuit Judges*,
and BUCKWALTER,[*] *District Judge*.

(Filed: December 21, 2006)

_____

OPINION OF THE COURT

_____

[*]The Honorable Ronald L. Buckwalter, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

FISHER, *Circuit Judge*.

The Gjopalajs petition for review of a final order of the Board of Immigration Appeals ("BIA") dismissing their appeal from an Immigration Judge's ("IJ") denial of asylum, withholding of removal under the Immigration and Nationality Act ("INA") § 241(b)(3), and protection under Article III of the Convention Against Torture ("CAT"). Because we find that the IJ's decision was supported by substantial evidence, we will deny the petition for review in part, and dismiss in part for lack of jurisdiction.

I.

As we write only for the parties, we will forgo a lengthy recitation of the factual and legal background to this case. Nikolle, Razije, Dorina, and Aldo Gjopalaj are natives and citizens of Albania who entered the United States in June 2003. After entry, they were placed in "asylum only proceedings" because they attempted to enter under the Visa Waiver Program ("VWP") using fraudulent Italian passports. The Petitioners applied for asylum, withholding of removal under INA § 241(b)(3), and protection under CAT.

During the proceedings, the Gjopalajs detailed their claimed grounds for asylum. Nikolle was an officer in the Albanian army, who was dismissed, he claimed, because he openly expressed opposition to the Democratic Party. In response to further questioning, however, he said that he was dismissed for refusing to sign an amendment to depoliticize the military.

After the Communist Party lost power in Albania in 1991, Nikolle was active in the then-ruling Socialist Party. He became an official member of the Socialist Party in 1994, and was a member of the Party's leadership in his town of Lezha from 1994 to 1996.

In 1994, he opened a restaurant in Lezha. According to his testimony, on the second day of elections in 1996, his restaurant was destroyed. Nikolle believed that a local businessman was involved in the incident because that businessman had threatened him and his wife and later constructed a building where his restaurant had been. The threats, however, came prior to the 1996 elections while the Socialist Party was still in power.

After spending two years in Greece, the Gjopalajs returned to Albania in 1998 when the Socialist Party regained power. Nikolle testified that "it was known" upon their return that he had left politics. In fact, the Socialist Party in Lezha asked Nikolle to be a candidate for mayor, but he refused.

In October 1998, the family moved to England and applied for asylum there. When their case was dismissed, they returned to Albania in May 2002.

On September 20, 2002, Nikolle had to travel out of town, and left his twelve-year-old daughter Dorina with his brother. That day, Dorina testified that she was standing outside of her school with several other children when a man approached and said "I'm sorry to bother you, but your dad asked me to pick you up from school." When

4

she attempted to walk away, he grabbed her from behind and pushed her into a car with three other men. They blindfolded her and tied her hands. Dorina's uncle arrived at the school shortly after this happened, and learned of the kidnaping from the other children gathered there. He chased down the car and rescued Dorina as the kidnapers fled by foot. Dorina testified before the IJ that none of the men ever said her name or her father's name. When asked whether she appeared different than the other children at school, she explained that she dressed better than other students and was "noticeable" because she had lived in England. She also explained that her family had not reported the incident to the police because they were often involved in criminal activity themselves.

To further support the Gjopalajs' case, Nikolle submitted a newspaper article that his brother in Albania had obtained for $500. It attempted to link Dorina's kidnaping with Nikolle's political background. However, the article did not exist in the records of the Library of Congress, even though it maintained copies of that particular periodical.

On September 27, 2004, the IJ denied the Gjopalajs' applications for relief. He found that the newspaper article submitted by Nikolle was more likely than not fabrication, and that there was insufficient evidence to find that the events described by the Gjopalajs were politically motivated. The BIA summarily affirmed the IJ's decision on November 7, 2005.[1]

---

[1]Where the BIA adopts the opinion of the IJ, we review the IJ's decision. *See Gao v. Ashcroft*, 299 F.3d 266, 271 (3d Cir. 2002).

II.

Under 8 U.S.C. § 1252(a)(1), we have jurisdiction over final orders of removal in immigration proceedings. Here, however, the context is slightly different because the IJ's decision arose in an "asylum only proceeding" within the VWP. This program allows aliens from certain countries to enter the United States for up to ninety days without a visa. *See* 8 U.S.C. § 1187(a). In return, aliens admitted in such a manner waive their right to challenge their removal except on the basis of asylum. *See* 8 U.S.C. § 1187(b). They may also claim withholding of removal and protection under CAT. *See* 8 C.F.R. § 1208.2(c)(3).

Thus, by denying the Gjopalajs' applications for asylum, withholding of removal, and protection under CAT, the IJ rendered them subject to removal from the United States. When the BIA affirmed the IJ's decision, Petitioners essentially became subject to a final order of removal tantamount to an alien ordered removed and denied relief in a removal proceeding under 8 U.S.C. § 1229a. Because we agree with the Second and Eleventh Circuits that "[t]here is nothing in the VWP statute to indicate that unsuccessful VWP applicants should be treated differently [with respect to judicial review] than any other inadmissible alien stopped at the border who has established sufficient credible fear of persecution to be referred to an IJ for a hearing," we exercise jurisdiction over this petition for review. *Nreka v. Attorney General*, 408 F.3d 1361, 1367-68 (11th Cir. 2005); *Kanacevic v. INS*, 448 F.3d 129, 135 (2d Cir. 2006); *see also Conoco, Inc. v. Skinner*, 970

6

F.2d 1206, 1214 (3d Cir. 1992) (noting that when a statute directs judicial review of a particular type of agency action, our review should extend to actions that are "tantamount" to those specified).

III.

We review the IJ's determinations under the deferential substantial evidence standard. *Abdille v. Ashcroft*, 242 F.3d 477, 483 (3d Cir. 2001). Under this standard, we regard factual findings as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). That is, the IJ's "finding[s] must be upheld unless the evidence not only supports a contrary conclusion, but compels it." *Abdille*, 242 F.3d at 483-84.

The Petitioners first argue that the IJ erred in finding they were not entitled to asylum. The Attorney General has discretion to grant asylum to refugees who are unable to return to their home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Persecution involves "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." *Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir. 1993). It only includes actions that are "committed by the government or forces the government is either 'unable or unwilling' to control." *Abdulrahman v. Ashcroft*, 330 F.3d 587, 592 (3d Cir. 2003).

As to the asylum claim, we are unable to say that the evidence compels a decision contrary to the one made by the IJ. Although the Petitioners endured several horrifying and troubling incidents in Albania, there is no evidence that these happened "on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Both of the main incidents relied on by the Gjopalajs appear to have been motivated by other factors. Nikolle himself testified that he believed the destruction of his restaurant was accomplished by another businessman who later built on the same location. And the IJ's finding that Dorina was likely singled out for kidnaping because she appeared to have more money than the other children is entirely reasonable. Dorina herself testified that she was "noticeable" because she had lived in England and wore nicer clothes than the other children at her school. Such targeting cannot form the basis of a social group claim because "whatever the common characteristic that defines the group, it must be one that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences." *Fatin*, 12 F.3d at 1239.

In addition, there is no evidence that the kidnaping was politically motivated. Nikolle had left politics by the time it happened, and the IJ reasonably determined that the newspaper article submitted by the Petitioners was more likely than not fabricated because it was obtained for money and could not be found in the Library of Congress's holdings of the periodical in which it was allegedly published. In light of this record, we

8

cannot say that the IJ erred in determining that the Petitioners had not established past persecution or a well-founded fear of future persecution in Albania.

The Gjopalajs next argue that the IJ erred in finding that they were not subject to withholding of removal under INA § 241(b)(3). To prevail on such an application, an alien must establish a "clear probability," *see INS v. Stevic*, 467 U.S. 407, 429 (1984), that his life or freedom would be threatened in the proposed country of removal "because of the alien's race, religion, nationality, membership in a particular social group or political opinion." 8 U.S.C. § 1231(b)(3)(A). Because this standard is more stringent than the "well-founded fear of persecution" standard employed in the asylum context, we have emphasized that an alien who fails to establish his eligibility for asylum "necessarily fails to meet the standard of withholding of removal under INA § 241(b)(3)." *Lukwago v. Ashcroft*, 329 F.3d 157, 182 (3d Cir. 2003).

Finally, the Gjopalajs argue that they are entitled to relief under Article III of CAT. Such relief is appropriate when an alien can prove that he will be tortured in his home country. 8 C.F.R. §§ 208.16 - 208.18. However, the Petitioners here did not raise this claim in their appeal to the BIA. Consequently, we are without jurisdiction to address this issue because we may only review a claim if "the alien has exhausted all remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1).

IV.

For the foregoing reasons, we will deny the Petitioners' application for review in part, and dismiss in part for lack of jurisdiction.