**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| MIHAI NICUSOR-REMUS, AKA Denis Philip Florance,<br><br>*Petitioner*,<br><br>v.<br><br>JEFFERSON B. SESSIONS, III, Attorney General of the United States,<br><br>*Respondent.* | No. 15-70588<br><br>Agency No. A095-441-678<br><br>OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted May 10, 2018
Seattle, Washington

Filed August 8, 2018

Before: Ronald M. Gould and Sandra S. Ikuta, Circuit
Judges, and John R. Tunheim, Chief District Judge.[*]

Opinion by Chief District Judge Tunheim

---

[*] The Honorable John R. Tunheim, Chief United States District Judge for the District of Minnesota, sitting by designation.

## SUMMARY[**]

### Immigration

The panel dismissed for lack of jurisdiction Mihai Nicusor-Remus's petition for review of the Board of Immigration Appeals' decisions denying his motion to terminate asylum-only proceedings and denying his application for asylum.

Nicusor entered the United States in 2000 pursuant to the Visa Waiver Program ("VWP"). After an arrest for credit card fraud in 2002, the Immigration and Naturalization Service issued a Notice of Intent to Deport, which concluded that Nicusor was removable and had waived his right to contest his removability as a VWP entrant. As part of his plea agreement in the credit card prosecution, Nicusor agreed to testify against his co-conspirators, in exchange for help resolving his immigration status. In 2004, an FBI agent and Immigration and Customs Enforcement agent escorted Nicusor across the border into Mexico, whereupon he was immediately issued an I-94 Departure Record, paroling him into the United States for "significant public interest," so he could testify against his co-conspirators. In 2012, after Nicusor's parole had expired, the Department of Homeland Security took Nicusor into custody pursuant to the 2002 removal order, after which Nicusor requested asylum, was placed in asylum-only proceedings, and denied asylum relief. Nicusor now seeks review of the denial of his motion to

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

terminate asylum-only proceedings and the denial of asylum relief.

The panel held that there was no final order of removal over which it had jurisdiction. The panel considered two possible decisions that could confer jurisdiction: (1) Nicusor's 2002 removal order and (2) the Board's order denying Nicusor's asylum application in the asylum-only proceeding.

The panel held that the 2002 Notice of Intent to Deport constituted a final order of removal for purposes of determining jurisdiction. The panel explained that the 2002 order could form the basis for jurisdiction over the Board's orders denying the motion to terminate asylum-only proceedings and denying asylum relief only if DHS properly placed Nicusor in asylum-only proceedings. The panel further explained that asylum-only proceedings were appropriate only if the 2002 order had not been executed.

The panel rejected Nicusor's argument that the denial of his asylum application in asylum-only proceedings constituted a final order of removal. The panel explained that although asylum-only proceedings may affect the ability of DHS to execute the outstanding removal order, such proceedings act only to stay enforcement of the original removal order. The panel explained that the denial of relief in asylum-only proceedings is not itself a final order of removal, but rather is relevant to the finality of the DHS's removal order of a VWP entrant.

The panel held that the 2002 order was executed when Nicusor departed in 2004. Because the 2002 order had already been executed when Nicusor entered the United

States in 2004, he was no longer an applicant under the VWP, but an applicant for admission. The panel concluded that DHS therefore erred in placing Nicusor in asylum-only proceedings. The panel further concluded that because DHS failed to make an additional finding of removability after apprehending Nicusor in 2012, there was no final order of removal over which it had jurisdiction.

## COUNSEL

Rosario Daza (argued) and Lori K. Walls, Washington Immigration Defense Group, Seattle, Washington; for Petitioner.

Matthew Allan Spurlock (argued), Trial Attorney; John S. Hogan, Assistant Director; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

TUNHEIM, Chief District Judge:

Petitioner Mihai Nicusor-Remus petitions for review of two orders of the Board of Immigration Appeals ("BIA") denying his motion to terminate asylum-only proceedings and his asylum application. Nicusor is subject to a 2002 removal order. We conclude that the 2002 removal order was executed when Nicusor briefly departed the United States in 2004. Because there is no final removal order over which we have jurisdiction, we dismiss Nicusor's petition for lack of jurisdiction.

I.

The Visa Waiver Program ("VWP") allows nationals of certain countries to enter the United States without a visa. 8 U.S.C. § 1187(a). Admission as a VWP entrant is subject to numerous restrictions, including waiver of any right "to contest, other than on the basis of an application for asylum, any action for removal of the alien." *Id.* § 1187(b)(2). The Department of Homeland Security ("DHS") determines whether a VWP entrant is removable "without referral of the alien to an immigration judge for a determination of deportability." 8 C.F.R. § 217.4(b)(1). VWP entrants are not entitled to full removal proceedings under Immigration and Nationality Act § 240, but they are entitled to asylum-only proceedings. *Id.* § 208.2(c).

In 2000, Nicusor – a Romanian national – entered the United States as a VWP entrant. In May 2002, Nicusor was arrested for credit-card fraud. The charges were dropped after he agreed to work as an FBI informant. In December

2002, Nicusor was again arrested for credit-card fraud. Immigration and Naturalization Services ("INS") (the predecessor of the immigration agencies now housed in DHS) detained Nicusor and issued a Notice of Intent to Deport, which concluded that Nicusor was removable and had waived his right to contest his removability as a VWP entrant. Nicusor contacted an FBI agent, who secured his release from INS custody.  As part of a plea agreement, Nicusor agreed to testify against his co-conspirators in exchange for assistance resolving his immigration status.  In December 2003, Nicusor was convicted of one count of conspiracy and sentenced to eight months of imprisonment.

Nicusor was released from jail sometime around March 2004.   Shortly after his release, an FBI agent and an Immigration and Customs Enforcement ("ICE") agent drove Nicusor to the United States-Mexico Border.  The agents escorted Nicusor across the border into Tijuana and then back into the United States.  According to Nicusor's testimony before the Immigration Judge ("IJ"), the agents wanted to take Nicusor out of the country and bring him back legally so that he could testify against the criminal organization at trial. On March 4, 2004, Nicusor was issued an I-94 Departure Record, paroling him into the United States for "significant public interest" under 8 U.S.C. § 1182(d)(5)(A).  Nicusor's parole later expired.

In February 2012, DHS took Nicusor into custody pursuant to the 2002 removal order.  Nicusor requested asylum.  DHS referred Nicusor to the IJ for asylum-only proceedings.  The referral lists Nicusor's "Place and Manner of Arrival" as "Seattle WA; Visa Waiver Program" on April 2, 2000.   A separate box lists his arrival category as "VWP/violator."

In two separate orders, the BIA denied Nicusor all requested relief.  Nicusor petitions for review of these two orders.

## II.

We have an obligation to review our jurisdiction *sua sponte*.  *Gupta v. Thai Airways Int'l, Ltd.*, 487 F.3d 759, 763 (9th Cir. 2007).  We have jurisdiction over "a final order of removal."  8 U.S.C. § 1252(a)(1).  A removal order is an order by an administrative officer "determining whether an alien is deportable, concluding that the alien is deportable or ordering deportation."  *Id.* § 1101(a)(47)(A).  "[A]ny alien ordered deported or removed . . . who has left the United States, shall be considered to have been deported or removed in pursuance of law, irrespective . . . of the place to which he departed."  *Id.* § 1101(g).

## III.

We must first determine which agency actions constitute final removal orders for purposes of this Court's jurisdiction. The parties present two possible agency actions that may constitute final removal orders:  (1) Nicusor's 2002 removal order and (2) the BIA's order denying Nicusor's asylum application in the asylum-only proceeding.  We will conclude that the 2002 removal order is a final removal order for purposes of our jurisdiction because it is an order of an administrative officer "determining whether an alien is deportable, concluding that the alien is deportable or ordering deportation."  8 U.S.C. § 1101(a)(47)(A).  We will conclude that the BIA's order denying Nicusor's asylum application in the asylum-only proceeding is not a final removal order unless the 2002 removal order remains in effect.

First, we must determine whether the 2002 removal order is a final removal order over which this Court may have jurisdiction. DHS determines whether a VWP entrant is removable "without referral of the alien to an immigration judge." 8 C.F.R. § 217.4(b)(1). "Removal [of a VWP entrant] by the district director is equivalent in all respects and has the same consequences as removal after proceedings [concluding that the alien is deportable or ordering deportation]." *Id.* § 217.4(b)(2). DHS's determination is an order of an administrative officer "determining whether an alien is deportable, concluding that the alien deportable or ordering deportation." *See* 8 U.S.C. § 1101(a)(47)(A). Accordingly, DHS's determination of a VWP entrant's removability constitutes an "order of removal." This Court has jurisdiction over Nicusor's 2002 removal order so long as it has not been executed.

Second, we must determine whether the BIA's order denying Nicusor's asylum application in the asylum-only proceeding is a final removal order over which this Court may have jurisdiction. When DHS determines that a VWP entrant is removable, the removal order "shall be effected without referral of the alien to an immigration judge for a determination of deportability," unless the VWP entrant applies for asylum. 8 C.F.R. § 217.4(b)(1). If the VWP entrant applies for asylum, DHS must place the VWP entrant in "asylum-only proceedings." *See id.* The asylum-only proceedings do not result in a removal order, although they may affect the ability of DHS to execute the outstanding removal order. Rather, the asylum-only proceedings behave like a stay of enforcement of the removal order. If the IJ grants the application for asylum or associated relief, DHS is prohibited from effecting the removal order unless the alien's asylum status is terminated. *Id.* § 1208.22.

Nicusor argues that the denial of his asylum application in the asylum-only proceedings is a final removal order. This argument conflates the "removal order" (i.e., DHS's determination that a VWP entrant is removable) with the action that makes the removal order "final" (i.e., the IJ's denial of the VWP entrant's only forms of relief). In *Bao Tai Nian v. Holder*, this Court held that "the denial of [an alien's] petition for asylum and other relief in 'asylum-only' proceedings is the 'functional equivalent' of a final order of removal" for purposes of determining jurisdiction. 683 F.3d 1227, 1230 (9th Cir. 2012). In a later case, this Court explained that this conclusion "was motivated, at least in part, to ensure the availability of such review." *Padilla-Ramirez v. Bible*, 882 F.3d 826, 835 (9th Cir. 2017) (citing *Kanacevic v. I.N.S.*, 448 F.3d 129, 135 (2d Cir. 2006)).

*Bao Tai Nian* and its progeny stand for the proposition that the denial of an asylum application in asylum-only proceedings "finalizes" DHS's removal order of a VWP entrant because the VWP entrant is entitled to no other forms of relief. 683 F.3d at 1230. However, *Bao Tai Nian* assumes that DHS has actually made a determination that the VWP entrant is removable and has properly referred him or her to asylum-only proceedings. DHS should not refer a VWP entrant to asylum-only proceedings unless it has made the initial determination that the VWP entrant is removable. *See* 8 C.F.R. § 217.4(b)(1). It is DHS's initial determination that constitutes the removal order over which this Court may have jurisdiction.

The issue in Nicusor's case is whether DHS made an initial determination of his removability. The 2002 removal order is the only determination of Nicusor's removability. When ICE apprehended Nicusor in 2012, it did not make an

additional determination of removability.  If the 2002
removal order was executed when Nicusor left the country in
2004, then Nicusor is not subject to a final removal order, and
DHS  erroneously  referred  Nicusor  to  asylum-only
proceedings by failing to make the initial determination of his
removability.

IV.

We must next decide whether the 2002 removal order was
executed when Nicusor left the United States in 2004.  The
Attorney General does not dispute that Nicusor left the
United States in 2004.  However, the Attorney General argues
that Nicusor's "physical departure" did not constitute a "legal
departure."  We will conclude that Nicusor's 2002 removal
order was executed when he left the United States and,
therefore, there is no final removal order over which we have
jurisdiction.

The starting point for interpreting a statute is the plain
meaning of its text.  *Altamirano v. Gonzales*, 427 F.3d 586,
592 (9th Cir. 2005).  A removal order is executed once an
alien "has left the United States."  8 U.S.C. § 1101(g).  The
statute makes no distinction between "physical" and "legal"
departures. *See id.*  The plain statutory text clearly envisions
that any departure is sufficient to execute a removal order,
regardless of how long the alien remains outside the United
States or to where the alien departs.

This reading is consistent with precedent.  In *Aguilera-
Ruiz v. Ashcroft*, a lawful permanent resident was ordered
deported but voluntarily left the United States to purchase
party supplies.  348 F.3d 835, 836 (9th Cir. 2003).  This
Court held that his brief departure executed the removal

order. *Id.* Other courts have also concluded that a brief departure executes a removal order. *See Mansour v. Gonzales*, 470 F.3d 1194, 1194–1200 (6th Cir. 2006); *Aleman-Fiero v. INS*, 481 F.2d 601, 601–02 (5th Cir. 1973).

The Attorney General relies on *Handa v. Clark* for the proposition that a physical departure does not execute a removal order. 401 F.3d 1129 (9th Cir. 2005). In *Handa*, a VWP entrant attempted to cross into Canada. *Id.* at 1132. Canada did not admit the VWP entrant, and he withdrew his entry application and returned to the United States, where he was apprehended upon his return. *Id.* On appeal, the VWP entrant argued that he was no longer a VWP entrant because he had departed the United States by physically crossing into Canada. *Id.* at 1133. This Court held that "a mere physical entry into Canada for a few seconds" could not remove the VWP entrant from the strictures of the program. *Id.*

To reconcile *Aguilera-Ruiz* and *Handa*, the Attorney General argues that a mere "physical departure" without a "legal departure" does not execute a removal order. The Attorney General's reading would require an alien to be legally admitted in a foreign country in order to execute the removal order. Under this reading, an alien who left the United States, illegally entered Canada, and remained there for 10 years would not have executed the removal order. Again, the statute makes no distinction between physical and legal departures. *See* 8 U.S.C. § 1101(g). All the statute requires to execute the removal order is for the alien to "le[ave] the United States." *Id.*

*Handa* applies to a unique set of facts. The alien in *Handa* never "left the United States" because (1) he was denied admission to Canada, (2) withdrew his request for

admission, and (3) immediately returned to the United States. 401 F.3d at 1132. By way of analogy, an individual who steps onto the doorstep but finds that the front door is locked has not left the outdoors. *Aguilera-Ruiz* is the rule; *Handa* is the exception.

The rule applies here. There is no evidence that Nicusor was denied admission into Mexico or that he encountered Mexican immigration officials. When Nicusor returned, he was paroled as an "alien applying for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). Moreover, the FBI and ICE agents clearly intended for Nicusor's brief departure to execute the removal order. We conclude that Nicusor executed the 2002 removal order when he departed the United States in 2004. Because there is no final removal order in this case, this Court lacks jurisdiction to hear Nicusor's petition.

Petitioner's pending motions to file supplemental briefs are denied as moot. Respondent's motion to strike is granted.

**DISMISSED for lack of jurisdiction.**