**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| RAUL PADILLA-RAMIREZ, *Plaintiff-Appellant*, <br><br> v. <br><br> DANIEL A. BIBLE; JEH CHARLES JOHNSON; JEFFERSON B. SESSIONS III, Attorney General; RICK LAYHER, *Defendants-Appellees.* | No. 16-35385 <br><br> D.C. No. 1:16-cv-00127-BLW <br><br><br> AMENDED OPINION |

Appeal from the United States District Court
for the District of Idaho
B. Lynn Winmill, Chief Judge, Presiding

Argued and Submitted March 13, 2017
San Francisco, California

Filed July 6, 2017
Amended February 15, 2018

Before:  J. Clifford Wallace, M. Margaret McKeown,
and Jay S. Bybee, Circuit Judges.

Opinion by Judge Wallace

**SUMMARY**<sup>*</sup>

### Immigration / Habeas Corpus

The panel amended an opinion affirming the district court's judgment denying Raul Padilla-Ramirez's habeas corpus petition, in which he sought a custody redetermination as he awaits the outcome of administrative proceedings to determine whether he has a reasonable fear of returning to his native country of El Salvador.

8 U.S.C. § 1226(a) grants the Attorney General discretion to detain an alien pending a decision on whether the alien is to be removed from the United States, and permits the Attorney General to release the alien on bond or conditional parole. Pursuant to 8 C.F.R. § 236.1(d)(1), an initial custody determination under section 1226(a) is made by the district director, but the detainee may request an additional bond hearing before an immigration judge. 8 U.S.C. § 1231(a) provides for mandatory detention during a ninety-day removal period, and discretionary detention beyond the removal period in certain circumstances. However, the bond hearing authorized under 8 C.F.R. § 236.1(d)(1) does not apply to detentions authorized under section 1231(a).

Padilla-Ramirez's entitlement to a bond hearing hinged on whether he is detained pursuant to section 1226(a) or section 1231(a). The panel held that reinstated removal orders are administratively final for detention purposes, and that the detention of aliens subject to reinstated removal

---

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

orders is governed by section 1231(a), rather than section 1226(a). Padilla-Ramirez was therefore not entitled to a bond hearing.

The panel noted that its decision creates a circuit split with the Second Circuit's decision in *Guerra v. Shanahan*, 831 F.3d 59 (2d Cir. 2016).

---

## COUNSEL

Maria E. Andrade (argued), Benjamin E. Stein (argued), and Christine M. Meeuwsen, Andrade Legal, Boise, Idaho; Matt Adams and Glenda M. Aldana Madrid, Northwest Immigrant Rights Project, Seattle, Washington; for Plaintiff-Appellant.

Brian C. Ward (argued), Trial Attorney; Gisela A. Westwater, Assistant Director; William C. Peachey, Director; Chad A. Readler, Acting Assistant Attorney General; District Court Section, Office of Immigration Litigation, United States Department of Justice, Washington, D.C.; for Defendants-Appellees.

Marc Van Der Hout and Amalia Wille, Van Der Hout Brigagliano & Nightingale LLP, San Francisco, California; Trina Realmuto, National Immigration Project fo the National Lawyers Guild, Boston, Massachusetts; for Amici Curiae National Immigration Project of the National Lawyers Guild, Detention Watch Network, Dolores Street Community Services, Immigrant Defenders Law Center, and Pangea Legal Services.

Abigail E. Pringle, Lauren J. Pomeroy, and Jeffry M. Gutkin, Cooley LLP, San Francisco, California; Monique R. Sherman, Cooley LLP, Palo Alto, California; for Amici Curiae Nonprofit Legal Services Organizations and Co-Director of Law School Immigration Clinic.

**OPINION**

WALLACE, Circuit Judge:

Raul Padilla-Ramirez appeals from the district court's judgment denying his habeas corpus petition, in which he seeks a custody redetermination as he awaits the outcome of administrative proceedings to determine whether he has a reasonable fear of returning to his native country of El Salvador. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

I.

We review the district court's denial of Padilla-Ramirez's habeas petition de novo. *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011). We also review questions of statutory construction de novo. *See Hing Sum v. Holder*, 602 F.3d 1092, 1095 (9th Cir. 2010).

II.

The facts of this case are undisputed. In 1999, Padilla-Ramirez unlawfully entered the United States without applying for admission or parole. When Immigration and Customs Enforcement (ICE) initiated removal proceedings against him in 2006, Padilla-Ramirez sought to avoid removal

by applying for asylum, withholding of removal, and relief under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (Convention). These applications were denied, but the immigration judge (IJ) allowed Padilla-Ramirez to depart the country voluntarily. In the event that Padilla-Ramirez failed to depart timely, the order of voluntary departure would become an order of removal.

Padilla-Ramirez appealed unsuccessfully the IJ's orders to the Board of Immigration Appeals (Board). He managed to obtain a sixty-day extension of his voluntary departure period, but failed to depart by the deadline. As a result, the voluntary departure order was converted into a removal order that became effective on January 25, 2009. ICE removed Padilla-Ramirez to El Salvador in February 2010.

In December 2015, ICE discovered that Padilla-Ramirez had re-entered the country illegally and was being detained in Idaho in connection with a state criminal prosecution. ICE promptly reinstated Padilla-Ramirez's original removal order pursuant to 8 U.S.C. § 1231(a)(5) and, following the dismissal of his state charges, took custody of Padilla-Ramirez in February 2016. Padilla-Ramirez then asserted that he feared returning to El Salvador and was referred to an asylum officer for a reasonable fear determination pursuant to 8 C.F.R. § 208.31. The asylum officer found that Padilla-Ramirez had stated a reasonable fear of persecution or torture if he were removed to El Salvador and referred him to an IJ to determine whether he is eligible for withholding of removal or protection under the Convention. These "withholding-only" proceedings are ongoing.

Padilla-Ramirez filed the instant habeas petition after the IJ denied his request for a bond hearing on grounds that she lacked jurisdiction to consider the request. The district court denied the petition on substantially the same grounds, concluding that Padilla-Ramirez is detained pursuant to a provision of the Immigration and Nationality Act (Act) that does not allow for bond hearings. Padilla-Ramirez appeals.

III.

Our task in this case is to determine which provision of the Act governs Padilla-Ramirez's detention. Padilla-Ramirez argues that he is detained pursuant to 8 U.S.C. § 1226(a), which grants the Attorney General discretion to detain an alien "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a)(1). That section also permits the Attorney General to release the alien on bond or conditional parole. *Id.* § 1226(a)(2). Pursuant to regulations, an initial custody determination under section 1226(a) is made by the district director, but the detainee may request an additional bond hearing before an IJ. 8 C.F.R. § 236.1(d)(1). As stated, Padilla-Ramirez requested such a bond hearing, but the IJ denied his request.

Conversely, the government contends that Padilla-Ramirez is detained pursuant to 8 U.S.C. § 1231(a). Section 1231(a) provides for mandatory detention during a ninety-day "removal period," *id.* § 1231(a)(2), and discretionary detention "beyond the removal period" in certain circumstances, *id.* § 1231(a)(6). The bond hearing authorized under 8 C.F.R. § 236.1(d)(1) does not apply to detentions authorized under section 1231(a). Thus, Padilla-Ramirez's entitlement to a bond hearing hinges on whether he is detained pursuant to section 1226(a) or section 1231(a).

Our decision only addresses Padilla-Ramirez's entitlement to an initial bond hearing under 8 C.F.R. § 236.1. We do not address Padilla-Ramirez's entitlement to a bond hearing after prolonged detention. We previously have held that "individuals detained under § 1231(a)(6) are entitled to the same procedural safeguards against prolonged detention as individuals detained under § 1226(a)." *Diouf v. Napolitano*, 634 F.3d 1081, 1084 (9th Cir. 2011).

## A.

Our analysis begins with the text of the provisions at issue. *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982). Section 1226(a)'s detention authority applies "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). By contrast, section 1231(a) applies during an alien's "removal period," *id.* § 1231(a)(2), which begins on the latest of three dates: (1) "[t]he date the order of removal becomes administratively final"; (2) "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order"; or (3) "[i]f the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement," *id.* § 1231(a)(1)(B)(i)–(iii).

We are concerned here only with the date of administrative finality. *See id.* § 1231(a)(i)(B)(i). Although Padilla-Ramirez may seek judicial review of an adverse decision in his withholding-only proceedings, *Andrade-Garcia v. Lynch*, 828 F.3d 829, 833 (9th Cir. 2016), that review would be confined to the order relating to his application for withholding. Likewise, judicial review of any challenge by Padilla-Ramirez to the reinstatement order

would be "limited to assessing ICE's determination of the factual predicates for reinstatement."[1] *Villa-Anguiano v. Holder*, 727 F.3d 873, 878 (9th Cir. 2013). The court would not review the underlying removal order itself, except in circumstances not applicable here. *See* 8 U.S.C. § 1231(a)(5).[2] Section 1231(a)(1)(B)(ii) therefore is inapplicable. *Diouf v. Mukasey*, 542 F.3d 1222, 1230 (9th Cir. 2008) (holding that "the plain text of" section 1231(a)(1)(B)(ii) "entail[s] judicial review of a *removal order*"). Section 1231(a)(1)(B)(iii) does not apply either because "an immigration process" is the only basis for Padilla-Ramirez's detention. 8 U.S.C. § 1231(a)(1)(B)(iii).

The question before us, then, is whether Padilla-Ramirez's reinstated removal order is administratively final. If it is, then section 1231(a) controls. If not, then section 1226(a) provides the only authority for detaining him.

Under the Act, a removal order becomes final "upon the earlier of . . . a determination by the Board . . . affirming such

---

[1] Padilla-Ramirez did not challenge the factual predicates for reinstatement. We do not consider whether such a challenge would trigger section 1226.

[2] We underscore that section 1231(a)(5)'s bar against collateral challenges to the underlying removal order is not absolute. "Although § 1231(a)(5) limits the scope of judicial review of reinstated removal orders, § 1252(a)(2)(D) reinstates this court's jurisdiction over certain constitutional claims and questions of law." *Villa-Anguiano*, 727 F.3d at 877 n.3. This jurisdiction, however, is limited to the narrow circumstance in which the alien can show a "gross miscarriage of justice" in the original removal proceedings. *Id.* at 877 (quoting *Garcia de Rincon v. Dep't of Homeland Sec.*, 539 F.3d 1133, 1138 (9th Cir. 2008)). We do not consider whether a collateral challenge of this type could trigger subsection (ii) because the issue is not before us.

order . . . or the expiration of the period in which the alien is permitted to seek review of such order by the Board." *Id.* § 1101(a)(47)(B)(i)–(ii). This definition has limited utility in the context of reinstated removal orders because the prior underlying removal orders cannot be reopened or reviewed, except in circumstances not applicable here. *Id.* § 1231(a)(5); *see supra* note 2. Indeed, we previously have concluded that "this statutory definition of finality does not dictate a clear answer here because there is no way to appeal the reinstatement of a removal order to the [Board]." *Ortiz-Alfaro v. Holder*, 694 F.3d 955, 958 (9th Cir. 2012). Accordingly, we must look elsewhere to determine the statute's meaning.

The government urges us to defer to a federal regulation which, it contends, answers the question before us. That regulation reads: "Execution of the reinstated order of removal and detention of the alien shall be administered in accordance with this part." 8 C.F.R. § 241.8(f). "[T]his part" refers to Part 241, which contains regulations implementing section 1231. On its face, this regulation appears to indicate that Padilla-Ramirez is detained pursuant to that section. However, the only detention regulation in Part 241 that could apply to an alien like Padilla-Ramirez simply states that "[o]nce the removal period defined in section 241(a)(1) of the Act begins, an alien in the United States will be taken into custody pursuant to the warrant of removal." *Id.* § 241.3(a). This regulation therefore does not answer the question of *when* the removal period begins. Because the regulation does not answer the question presented, we will conduct our own review of the statute.

Reinstatement of a removal order is governed by section 1231(a)(5), which reads as follows:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

8 U.S.C. § 1231(a)(5). This provision indicates, in two ways, that a reinstated removal order is administratively final. First, a removal order undoubtedly is administratively final when it first is executed; if it is reinstated from its original date, it stands to reason that it retains the same administrative finality because section 1231(a)(5) proscribes any challenge that might affect the status of the underlying removal order.

Second, the reinstatement provision is located in the same section of the Act, tellingly entitled "Detention and removal of aliens *ordered removed*," *id.* § 1231 (emphasis added), as the detention authority that the government claims in this case. This placement suggests that Congress meant for the detention of aliens subject to reinstated removal orders to be governed by that section, which would require that such orders be administratively final. The fact that the reinstatement provision appears among section 1231(a)'s detention and supervision provisions further bolsters this inference. *Id.* § 1231(a)(2)–(3), (6).

Notwithstanding section 1231(a)(5)'s mandatory language, it offers some leeway with respect to withholding-only proceedings. *Andrade-Garcia*, 828 F.3d at 831. Such

proceedings are an exception to the general prohibition against seeking relief from removal pursuant to a reinstated order. *See* 8 C.F.R. § 241.8(e). Furthermore, the Department of Homeland Security likely "cannot execute the reinstated removal order until the reasonable fear and withholding of removal proceedings are complete." *Luna-Garcia v. Holder*, 777 F.3d 1182, 1183 (10th Cir. 2015), *citing* 8 C.F.R. §§ 208.1(a), 208.5(a). This removal moratorium would override section 1231(a)(5)'s command that "the alien *shall be removed* under the prior order *at any time after the reentry*." 8 U.S.C. § 1231(a)(5) (emphasis added). It is thus clear that some aspects of section 1231(a)(5) do not apply with full force to an alien involved in withholding-only proceedings.

Withholding-only proceedings do not, however, purport to override section 1231(a)(5)'s prohibition on reopening or reviewing a prior removal order. *See Ortiz-Alfaro*, 694 F.3d at 958 (stating that a grant or denial of withholding would "have no effect on the reinstatement of [the] removal order" at issue in that case). At most, a grant of withholding will only inhibit the order's execution with respect to a particular country. Even if Padilla-Ramirez were to prevail on his application, he still would be subject to removal pursuant to the reinstated order—the government simply would have to seek an alternate country to receive him. *See* 8 U.S.C. § 1231(b)(2); *Lanza v. Ashcroft*, 389 F.3d 917, 933 (9th Cir. 2004) (acknowledging that withholding relief "only prohibits removal of the [alien] to the country of risk, but does not prohibit removal to a non-risk country" (quoting *Castellano-Chacon v. INS*, 341 F.3d 533, 545 (6th Cir. 2003))). The removal order itself therefore is not at issue in the withholding-only proceedings, meaning that those proceedings cannot diminish or otherwise affect its finality.

Because Padilla-Ramirez's reinstated removal order remains administratively final, he is detained pursuant to section 1231(a).

## B.

Section 1226(a), which applies only while "a decision on whether the alien is to be removed from the United States" is "pending," 8 U.S.C. § 1226(a), is not to the contrary because such a decision is not pending in Padilla-Ramirez's withholding-only proceedings. The decision to be made in those proceedings is not whether he is to be removed from the United States, but merely whether he may be removed to El Salvador. This narrow question of *to where* an alien may be removed is distinct from the broader question of *whether* the alien may be removed; indeed, the former inquiry requires that the latter already have been resolved in the affirmative. The fact that the government may still remove Padilla-Ramirez, albeit to an alternate country, even if he is granted withholding confirms that the decision identified in section 1226(a) has already been made—he is "to be removed *from the United States*." *Id.* (emphasis added). That decision therefore is not pending, meaning that section 1226(a) cannot apply. The fact that Padilla-Ramirez may seek further withholding relief if he prevails on his present application does not change this conclusion since the pending decision in such hypothetical proceedings always will be whether he can be removed to a particular country, which does not implicate section 1226(a).

In this respect, *Zadvydas v. Davis*, 533 U.S. 678 (2001), is instructive. There, an alien (Zadvydas) had been ordered removed and was detained pursuant to section 1231(a). *See id.* at 683–84. As it turned out, none of the available countries

of removal were willing to accept him. *Id.* at 684. Zadvydas then challenged his continuing detention, which appeared at that point to be potentially permanent. *Id.* at 684–85. The Supreme Court, relying on the canon of constitutional avoidance, held that the government's detention authority under section 1231(a) terminates "once removal is no longer reasonably foreseeable." *Id.* at 699. But even in such a circumstance, section 1231(a) still controls: although the government cannot detain the alien, the alien is subject to supervision under section 1231(a)(3). *See id.* at 696.

Like Zadvydas, Padilla-Ramirez is subject to an order of removal that is, by all appearances, administratively final. Like Zadvydas, the only obstacles to Padilla-Ramirez's removal from the United States are potential individualized determinations that he cannot be removed to specific countries. There is an obvious distinction between the two cases in that those determinations may be made in domestic administrative proceedings in Padilla-Ramirez's case, whereas Zadvydas was made unremovable by virtue of other countries' refusals to accept him. However, the touchstone of section 1226 is the nature of the decision to be made, not the identity of the decision-maker, and the decision to be made in this case is the same as in *Zadvydas*: whether Padilla-Ramirez's removal order may be executed with respect to particular countries. The fact that Zadvydas was detained pursuant to section 1231(a) even while the government cycled through the list of possible removal countries indicates that such country-specific determinations are not "decision[s] on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Accordingly, section 1226(a) has no application here.

C.

Padilla-Ramirez argues that we are foreclosed from holding that section 1231(a) governs his detention because we have already decided that reinstated removal orders are not final during the pendency of withholding-only proceedings. In *Ortiz-Alfaro v. Holder*, an alien subject to a reinstated removal order sought to challenge a federal regulation governing withholding-only proceedings because it prevented him from applying for asylum. 694 F.3d at 956. At the time he filed his petition for review, however, his withholding-only proceedings were still ongoing. *Id.* at 957. We held that we lacked jurisdiction to review the petition because the reinstated removal order would not become "final" for purposes of judicial review pursuant to 8 U.S.C. § 1252(a)(1) until the alien's withholding-only proceedings concluded. *Id.* at 957–58.

At first blush, *Ortiz-Alfaro* appears to support Padilla-Ramirez's position. But the case is readily distinguishable because its holding rested on the canon of constitutional avoidance. We acknowledged that there were "compelling arguments in favor of finding that [the alien's] reinstated removal order [wa]s final," but observed that such a conclusion "would make it impossible for [the alien] to timely petition for review of any IJ decisions denying him relief or finding that he does not have a reasonable fear." *Id.* at 958. Because this "could raise serious constitutional concerns," we decided that the reinstated order would not become final for judicial review purposes until the conclusion of the alien's withholding-only proceedings. *Id.*

Holding that Padilla-Ramirez's reinstated order is administratively final for detention purposes poses no such

constitutional difficulty, so the avoidance canon need not dictate the outcome here. In such a situation, the normal presumption that a particular word has the same meaning in different parts of a statute can give way if the provision at issue points toward a different meaning. *See Sun v. Ashcroft*, 370 F.3d 932, 939–40 (9th Cir. 2004). As explained above, the text and structure of the Act indicate that Congress intended for section 1231(a) to govern detention of aliens subject to reinstated removal orders. *Ortiz-Alfaro* therefore does not control the outcome of this case.

Our recent decision in *Ayala v. Sessions*, 855 F.3d 1012 (9th Cir. 2017), is no different. That case came to us in a somewhat problematic procedural posture. After the government reinstated the alien's expedited order of removal, she expressed a fear of returning to Guatemala. *Id.* at 1016. An asylum officer determined that she had not stated a reasonable fear of persecution or torture, and an IJ affirmed the officer's conclusion. *Id.* The alien then moved to reopen and reconsider that decision, which the IJ denied. *Id.* at 1017. The denial order indicated that it was final unless appealed to the Board within thirty days. *Id.* So the alien appealed to the Board, but the Board lacked jurisdiction to review the appeal and dismissed it on that basis. *Id.* The alien then petitioned for review in this court. *Id.*

We faced a jurisdictional dilemma. Although the petition had been filed within four days of the Board's dismissal of the alien's appeal, more than thirty days had elapsed since the IJ's denial of the motion to reopen. *Id.* Thus, whether we had jurisdiction depended on which of the two orders constituted a "final order" for purposes of judicial review. *See* 8 U.S.C. § 1252(b)(1). We held that the Board's dismissal of the alien's appeal was the final order for three reasons, two of

which are relevant here. First, because the IJ's denial of the motion to reopen effectively (and misleadingly) instructed her to appeal to the Board, administrative proceedings did not conclude until the Board issued its order. *Ayala*, 855 F.3d at 1019. Second, holding that the IJ's denial was the final order would have cost the alien her only opportunity for judicial review of the adverse reasonable fear determination. *Id.* Citing *Ortiz-Alfaro*, we reiterated that we generally will not "apply[] rules in a manner that effects such a total deprivation of judicial review." *Id.* (The third reason involved a practical concern about delays caused by appeals that the Board undisputably lacks jurisdiction to review, which does not bear on this case. *Id.* at 1019–20.)

*Ayala* tracks *Ortiz-Alfaro* in all important respects, as both cases addressed the finality of reinstated orders for purposes of judicial review and were decided in large part to preserve the petitioners' ability to obtain such review. Our statement in *Ayala* that "a removal order is considered final only when 'all administrative proceedings have concluded,'" *id.* at 1019, *quoting Abdisalan v. Holder*, 774 F.3d 517, 526 (9th Cir. 2014) (en banc), *as amended* (Jan. 6, 2015), broke no new ground. *Ortiz-Alfaro* stands for the same proposition—that a reinstated removal order is not "final" for judicial-review purposes until the relevant administrative proceedings conclude. The question in *Ayala* was simply at what point those proceedings had ended. Accordingly, *Ayala* offers no more support than *Ortiz-Alfaro* for adopting Padilla-Ramirez's preferred interpretation of finality in the detention context.

D.

We are not the first federal appellate court to consider this issue. In *Guerra v. Shanahan*, 831 F.3d 59 (2d Cir. 2016), the Second Circuit, guided by the text of section 1226(a) and circuit precedents, held that an alien subject to a reinstated removal order is detained pursuant to section 1226(a) during withholding-only proceedings. *Id.* at 62–64. This holding, of course, is contrary to our conclusion that section 1231(a) applies to aliens like Padilla-Ramirez. Although we are wary to create a circuit split, we must part company with our sister circuit here.

For the reasons already explained, we respectfully disagree with the Second Circuit's reading of section 1226(a). In concluding that "the purpose of withholding-only proceedings is to determine precisely whether 'the alien is to be removed from the United States,'" *id.* at 62, *quoting* 8 U.S.C. § 1226(a), the court did not paint with a fine enough brush. The purpose of such proceedings instead is to determine whether the alien is to be removed *to* a particular country (in Padilla-Ramirez's case, El Salvador). No judge, agency, or court will be called upon to decide whether Padilla-Ramirez may be "removed *from* the United States." 8 U.S.C. § 1226(a) (emphasis added). Even if the cumulative effect of the government's removal efforts is that he cannot be removed from the country—which is entirely speculative at this point—he would be no different than the alien in *Zadvydas*.

The cases cited by the Second Circuit do not convince us otherwise. First, the court attempted to draw an analogy to asylum-only proceedings, whereby an alien obtains entry to the country by waiving his right to challenge removal except

by applying for asylum. *Guerra*, 831 F.3d at 63 & n.2, *citing Kanacevic v. INS*, 448 F.3d 129 (2d Cir. 2006). In *Kanacevic*, the Second Circuit held that it had jurisdiction to review a denial of asylum notwithstanding the absence of a "final order of removal," 8 U.S.C. § 1252(a)(1), because such a denial "is the functional equivalent of a removal order" in asylum-only proceedings, *Kanacevic*, 448 F.3d at 134–35. The implication in *Guerra* is that the denial of withholding in withholding-only proceedings is likewise the "functional equivalent" of a final removal order.

Far from supporting the Second Circuit's analogy, *Kanacevic* underscores a critical distinction between asylum-only proceedings and withholding-only proceedings: in the former, the denial of asylum *is* the order of removal. Consequently, there can be no removal order, final or otherwise, until the alien's claim for relief is resolved. Not so in withholding-only proceedings, where a final removal order has been not only entered but *executed* by the time a withholding-only claim is made. Also, in contrast to withholding-only proceedings, the removal order itself is at issue in asylum-only proceedings, as evidenced by the fact that the order (i.e., denial of asylum) is subject to judicial review. *See id.* Finally, *Kanacevic*, like *Ortiz-Alfaro* and *Ayala*, addressed finality for judicial-review purposes and was motivated, at least in part, to ensure the availability of such review. *Id.* at 135 ("Were we to . . . hold[] that the disposition of asylum-only proceedings does not function as a final order of removal . . . , we would create uncertainty over exactly what procedure a Visa Waiver applicant could pursue in order to obtain review of his or her asylum proceedings in the Courts of Appeals"). *Kanacevic* therefore is a poor fit in helping to decide this case.

The second case relied on by the Second Circuit, *Chupina v. Holder*, 570 F.3d 99 (2d Cir. 2009), stands only for the unremarkable proposition that a removal order does not become final for purposes of judicial review until all of an alien's claims for relief made during his original removal proceedings are resolved. *Id.* at 103, *citing* 8 U.S.C. § 1101(a)(47)(B)(i), (ii); *see also Abdisalan*, 774 F.3d at 526. That principle does not answer the question of what effect a new claim for relief has after a final removal order has been entered, executed, and immunized from reopening or review. *See* 8 U.S.C. § 1231(a)(5). Indeed, *Chupina*'s holding—that a denial of asylum was not a final removal order because the Board had remanded the alien's other claims for relief—rested largely on the court's recognition that the original removal order would be in flux until the IJ and Board resolved the remanded claims. 570 F.3d at 103. As discussed above, a grant of withholding in Padilla-Ramirez's case will "in no way implicate[] the underlying . . . removal order." *Ayala*, 855 F.3d at 1018. *Chupina*'s reliance on the Act's definition of a final removal order, 570 F.3d at 103, which "does not dictate a clear answer" in the reinstatement context, *Ortiz-Alfaro*, 694 F.3d at 958, further distances that case from the one before us. As a result, *Chupina* cannot bear the weight that the Second Circuit has placed on it.

Finally, the Second Circuit fell back on "principles of administrative law" to reject the "tiers of finality" that the government urges in this case. *Guerra*, 831 F.3d at 63 (internal quotation marks omitted). The Second Circuit is correct that only an agency action marking "the consummation of the agency's decisionmaking process" qualifies as final agency action. *Id.*, *quoting U.S. Army Corps of Eng'rs v. Hawkes Co.*, — U.S. —, 136 S. Ct. 1807, 1813 (2016). But its conclusion that no such consummation exists

while withholding-only proceedings are ongoing again misunderstands the decision at stake in those proceedings. The agency already decided that Padilla-Ramirez "is to be removed from the United States," 8 U.S.C. § 1226(a), and a different, more limited decision is now pending in his withholding-only proceedings—namely, whether he may be removed to El Salvador. The agency has consummated its decision-making regarding the first issue, but not the second. It therefore is consonant with settled administrative legal principles to hold that Padilla-Ramirez's reinstated removal order (i.e., the agency's decision that he "is to be removed from the United States," *id.*) is final for detention purposes even though it lacks finality for purposes of judicial review of his withholding-only claim.

## IV.

As a general rule, "we decline to create a circuit split unless there is a compelling reason to do so." *Kelton Arms Condo. Owners Ass'n, Inc. v. Homestead Ins. Co.*, 346 F.3d 1190, 1192 (9th Cir. 2003). This is especially true where the rules at issue "are best applied uniformly." *Id.* The Immigration and Nationality Act, a comprehensive federal scheme that requires a nationally unified administration program, certainly falls into this category. While this consideration ordinarily would counsel in favor of adopting the Second Circuit's resolution of the issue before us, we believe that the legislative intent on this point is in clear opposition to that resolution. By its terms, section 1231(a)(5) inoculates the prior removal orders underlying reinstatement orders against any challenge, and withholding-only proceedings do not override that proscription. Our own decisions in *Ortiz-Alfaro* and *Ayala*, which addressed finality for judicial-review purposes and turned principally on

avoiding a construction that would severely inhibit or eliminate that review, are not controlling in the detention context. Nor are we persuaded by the Second Circuit's analysis in reaching the opposite conclusion in *Guerra*. So even though it may create discord in our immigration system, we must give effect to Congress's purpose as we understand it. The judgment of the district court is affirmed. If uniformity is required, we are content to leave it to the Supreme Court to harmonize the resulting split of authority.

**AFFIRMED.**